UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| **BONNIE R. PENDLETON** : | |
| 1537 Coppercreek Court : | **CASE NO.:** |
| Florence, Kentucky 41042 : | |
| : | **JUDGE:** |
| **Plaintiff,** : | |
| : | **ERISA COMPLAINT** |
| v. : | |
| : | |
| **AT&T SERVICES, INC.** : | |
| 208 South Akard Street : | |
| Dallas, Texas 75202 : | |
| : | |
| Serve: : | |
| CT Corporation System : | |
| 306 West Main Street, Suite 512 : | |
| Frankfort, Kentucky 40601, : | |
| : | |
| and : | |
| : | |
| **AT&T LEGACY MANAGEMENT** : | |
| **PROGRAM OF THE AT&T PENSION** : | |
| **BENEFIT PLAN** : | |
| 208 South Akard Street : | |
| Dallas, Texas 75202 : | |
| : | |
| Serve: : | |
| CT Corporation System : | |
| 1999 Bryan Street, Suite 900 : | |
| Dallas, Texas 75201-3136, : | |
| : | |
| **Defendants.** | |

**COMES NOW**, the Plaintiff, Bonnie R. Pendleton, by and through counsel, and for her Complaint under the Employment Retirement Income Security Act of 1975 ("ERISA"), 29 U.S.C. §1132, and applicable law, and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Bonnie R. Pendleton has been a resident of the Commonwealth of Kentucky, at all times relevant to this Complaint, and a beneficiary of the AT&T Legacy Management Program of the AT&T Pension Benefits Plan ("the Plan"), as the surviving spouse of Plan Participant, C.B. Pendleton, as defined by ERISA, 29 U.S.C. §1002(8) and applicable law, and ERISA, 29 U.S.C. §1002(7) and applicable law, respectively.

2. Defendant AT&T Services, Inc. ("Plan Administrator") has at all times been a corporate resident of the State of Texas, authorized to do business in the Commonwealth of Kentucky, and the Plan Administrator and fiduciary under ERISA, 29 U.S.C. §1002(16)(A) and applicable law.

3. Defendant AT&T Legacy Management Program of the AT&T Pension Benefits Plan ("the Plan") has at all relevant times been an employee pension benefit plan within the meaning of ERISA, 19 U.S.C. §1002(2)(A).

4. This Court has subject matter jurisdiction over the claims identified in this Complaint under ERISA, 29 U.S.C. §§1132(e) and (f), and 1331.

5. Venue lies in the United States District Court for the Eastern District of Kentucky under ERISA, 29 U.S.C. §1132(e)(2) because the action is brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and Ms. Pendleton resides in this District.

## FACTS

6. Plaintiff incorporates the previous paragraphs of this Complaint as if fully rewritten herein.

7. C.B. Pendleton was employed by AT&T from April 1979 until his death on January 14, 2017.

8. Mr. Pendleton became eligible to participate in the Plan on January 30, 1983.

9. On January 17, 2017, Mr. Pendleton's manager contacted the Fidelity Service Center to report Mr. Pendleton's death.

10. On March 13, 2017, AT&T sent Ms. Pendleton a correspondence announcing that, as of February 1, 2017, her survivor benefit under the Plan would be either (1) a Single Life Annuity ("SLA") under the ALM Program in the amount of $3,284.48; or (2) a Plus Partial Lump Sum ("PPLS") in the amount of $132,779.32 and a Residual Single Life Annuity ("RSLA") in the amount of $4,722.77. **Exhibit A**.

11. On April 5, 2017, AT&T sent Ms. Pendleton a correspondence announcing that, as of September 1, 2018, the SLA value would be calculated at $3,564.04; the PPLS at $132,779.32; and the RSLA at $5,256.75. **Exhibit B**.

12. On April 3, 2018, AT&T sent Ms. Pendleton a correspondence announcing that, as of April 1, 2018, the SLA value would be calculated at $3,491.34; the PPLS at $132,779.32; and the RSLA at $3,107.47. **Exhibit C**.

13. On April 23, 2018, AT&T sent Ms. Pendleton yet another correspondence announcing that, as of September 1, 2018, the SLA value would be $3,567.43; the PPLS at $132,779.32; and the RSLA at $3,181.73. **Exhibit D**.

14. On May 4, 2018, AT&T sent Ms. Pendleton another correspondence announcing that the calculations identified in Exhibit D were derived from an unidentified Plan provision effective January 1, 2018. **Exhibit E**.

15. On May 11, 2018, Fidelity employee Carly Ramsey texted Ms. Pendleton's son to inform him that AT&T "screwed [Ms. Pendleton] over" by recalculating her survivor pension benefit by relying on a January 1, 2018 Plan provision that changed the

3

benefits formula to run with the beneficiary's age, instead of the age of the Plan participant. **Exhibit F**. Because Ms. Pendleton is not yet 65, this resulted in a downward adjustment of over $2,000 per month. *Id.* In her text, Ms. Ramsey acknowledges that "[AT&T] never sent any documentation out saying that the Plan had changed the rules on the beneficiary formula." *Id.*

16. Ms. Pendleton followed up with a request for a copy of the unidentified Plan provision effective January 1, 2018 in a May 21, 2018 correspondence, which AT&T received on May 30, 2018. **Exhibit G**.

17. On July 2, 2018, AT&T sent Ms. Pendleton a correspondence enclosing an electronic copy of the Plan effective as of January 14, 2017. **Exhibit H**. Exhibit H does not include the still unidentified Plan provision dated January 1, 2018, despite AT&T's alleged reliance on that alleged provision in support of the theory that Ms. Pendleton's benefit is subject to ERF, and therefore reduced from the Exhibit C calculations.

18. On July 26, 2018, Ms. Pendleton submitted her initial claim under the Plan to Fidelity Service Center, Claims and Appeals ("Fidelity"). Fidelity provides administrative services to the Plan and the Plan Administrator, and was their agent at all times relevant to this Complaint.

19. On October 26, 2018, Fidelity and/or the Administrator rejected Ms. Pendleton's initial claim. **Exhibit I**. Therein, Fidelity and/or the Administrator relied on an incomplete and outdated copy of the Plan, attached thereto as "Attachment II." Attachment II is also the wrong document. Specifically, Fidelity claims to have relied on Plan language dated December 1, 2016. Yet, the actual December 1, 2016 document is different than Attachment II. Specifically, the undated Plan provision 9.1.1(1) relied on by Fidelity and/or the Administrator, states:

> The amount determined under Paragraph 7.2.2(1), except that the age of the Surviving Spouse will be substituted for the Participant's age and the Surviving Spouse's age sixty-five (65) for the Participant's Normal Retirement Age.

Section 9.1.1. of the *actual* December 1, 2016 Plan, however, states:

> In the event an EPBO Eligible Participant dies after September 8, 2015, but prior to the end of the applicable EPBO election window as set forth in Section 3.2.2 of this Supplement, the surviving Spouse, Legally Recognized Partner, or other beneficiary of such EPBO Eligible Participant will be eligible to elect to receive a single lump sum payment equal to the amount of the EPBO Lump Sum that would have been payable to the EPBO Eligible Participant. Such payment, if elected, will be paid in lieu of, and not in addition to, any other Survivor Benefit otherwise payable under the applicable Program(s). **Exhibit J**.

20. The December 1, 2016 Section 9.1.1 refers only to lump sum payments. It is silent as to annuity options. Fidelity and/or the Administrator backfilled a phony document to mislead Ms. Pendleton.

21. The October 26, 2018 letter also states that the Administrator has determined that the calculation in the April 23, 2018 letter is the correct calculation. But that letter doesn't identify any controlling Plan provision, or contain any calculations whatsoever. To account for that ambiguity, the May 4, 2018 letter claims that the Administrator relied on a January 1, 2018 Plan provision to calculate Ms. Pendleton's benefit. According to that letter, this calculation was made in April 2018. Again, however, any change to the Plan effective January 1, 2018 would be ineffective as to Mr. Pendleton because he died in January 2017.

22. Ms. Pendleton has repeatedly asked for the January 2018 provision that the Administrator claims in the May 4 letter to no avail.

23. This shifting inconsistency on what information the Administrator actually used to calculate Ms. Pendleton's benefit is troubling, and violates ERISA's most basic

5

transparency requirements. The Administrator has clearly tried to invent a Plan provision with additional claim requirements that it refuses to identify to avoid paying Ms. Pendleton the benefit she's entitled to. The Administrator's discretion to interpret the Plan does not include the authority to add eligibility requirements. *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004).

24. Under even the most deferential review, adding eligibility requirements to the Plan is arbitrary and capricious. *Jones, supra*. The Defendants' conduct overall in the handling of Ms. Pendleton's claim was arbitrary and capricious, and calculated to benefit themselves over her.

25. On December 20, 2018, Ms. Pendleton appealed the initial denial of her claim to the Benefits Plan Administrator. **Exhibit K**.

26. On January 18, 2019, the Administrator retaliated by further reducing Ms. Pendleton's benefit from $3,181,73 to $2,866.62 without explanation. Ms. Pendleton telephoned the Administrator for an explanation. She was told that her benefit was reduced due to a "system update."

27. The Benefit Plan Committee denied Ms. Pendleton's appeal on March 28, 2019. **Exhibit L**. Therein, yet again, the Administrator failed to actually identify the applicable Plan provision justifying Ms. Pendleton's reduction in benefits.

28. To date, the Defendants have failed to identify any Plan provision justifying its arbitrary, capricious, and retaliatory conduct.

29. Mr. Pendleton dutifully served AT&T for almost 40 years. During that period, he forewent certain compensation under the promise that he and/or Mrs. Pendleton would enjoy pension benefits. Instead, Mrs. Pendleton has been met with

hostility, shifting rationales, self-dealing, and retaliation by the Plan Administrator at every turn.

30. Ms. Pendleton has exhausted her administrative remedies.

## CAUSES OF ACTION

### Count I
### Breach of Fiduciary Duty, ERISA, 29 U.S.C. §1132(a)(3) for Failure to Administer Plan in Accordance with Applicable Law

31. Plaintiff incorporates the previous paragraphs of this Complaint as if fully rewritten herein.

32. ERISA, 29 U.S.C. § 1004(a), obliges fiduciaries like the Defendants to discharge their duties with respect to a Plan solely in the interest of the participants and beneficiaries, like Ms. Pendleton, for the exclusive purpose of providing benefits to participants and defraying reasonable expenses of administering the Plan, and in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with other provisions of ERISA.

33. ERISA, 29 U.S.C. § 1132(a)(3), authorizes a beneficiary of a Plan like the Plaintiff to file suit to "enjoin any act or practice" that violates Title I of ERISA or the terms of a Plan, and/or to obtain "other appropriate relief" to redress such violations.[1]

34. By engaging in the acts and omissions described herein, including without limitation, interpreting the Plan in a manner contrary to applicable federal law, refusing to apply the law in effect at the time of Plaintiff's claim, and refusing to provide her the

---

[1] 29 U.S.C. § 1055(a)(2), is part of Title I of ERISA.

benefit mandated by ERISA, Defendants have breached their fiduciary duty to Ms. Plaintiff and have violated Title I of ERISA.

35. As a direct and proximate result of Defendants breaches of fiduciary duty described herein, Plaintiff has been damaged in an amount in excess of the jurisdictional threshold of this Court, to be determined by the trier of fact.

## Count II
### Breach of Fiduciary Duty, ERISA, 29 U.S.C. §1132(a)(3) for Failure to Inform and/or Misleading Communications

36. Plaintiff incorporates the previous paragraphs of this Complaint as if fully rewritten herein.

37. ERISA fiduciaries like the Defendants are obliged to disclose material information to participants and beneficiaries, like Ms. Pendleton, and have a duty not to mislead a plan participant and/or beneficiary.

38. Misleading communications to plan participants regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for a breach of fiduciary duty. Defendants breached their fiduciary duties to Ms. Pendleton by providing her with materially misleading information as detained herein, regardless of whether their statements or omissions were made negligently or intentionally.

39. Specifically, Defendants breached their fiduciary duty to Ms. Pendleton by failing to provide her with Plan documents that supported their calculation of benefits, because they cannot. No such documents exist.

40. Defendants also breached their fiduciary duties to Ms. Pendleton by repeatedly identifying different and/or inapplicable Plan documents to justify progressively decreasing the value of Ms. Pendleton's benefit.

8

41. As a direct and proximate result of the breaches of fiduciary duty described herein, Ms. Pendleton has been injured in an amount in excess of the jurisdictional threshold of this Court, to be determined by the trier of fact.

## Count III
## Alternative Claim for Benefits, ERISA, 29 U.S.C. §1132(a)(1)(B)

42. Plaintiff incorporates the previous paragraphs of this Complaint as if fully rewritten herein.

43. The Plan is an "ERISA" plan within the meaning of 28 U.S.C. §1132(a)(1)(B). To this end, Section 1132(a)(1)(B), permits a Plan participant like Ms. Pendleton to bring a civil action to recover benefits due to her under the terms of a Plan, to enforce her rights under the terms of a Plan, and/or to clarify her rights to future benefits under the terms of a Plan.

44. The Defendants failed to properly calculate Ms. Pendleton's benefits in the manner described herein

45. As a direct and proximate result of Defendants' failure to calculate her benefits, Ms. Pendleton has suffered damages in an amount in excess of the jurisdictional threshold of this Court, to be determined by the trier of fact.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Bonnie R. Pendleton demands judgment against Defendants, AT&T Legacy Management Program of the AT&T Pension Benefits Plan and AT&T Services, Inc. as follows:

A. That the Court order declaratory and injunctive relief as necessary and appropriate, including without limitation, enjoining Defendants from further

violating the duties, responsibilities, and obligations imposed on it by ERISA, with respect to the Plan;

B. That the Court award, declare or otherwise provide Plaintiff all relief under ERISA, 29 U.S.C. §1132(a), and any other applicable law, that the Court deems proper and such appropriate equitable relief as the Court may order, including damages, an accounting, surcharge, disgorgement of profits, equitable lien, constructive trust, or other remedy;

C. That the Court award to Plaintiff attorneys' fees and expenses; and

D. That the Court award Plaintiff her pre-judgment and post-judgment interest.

## JURY DEMAND

Plaintiff demands a trial by jury on all so issues so triable.

Respectfully submitted,

*/s/ Justin Whittaker*
Justin Whittaker, Esq. (92364)
HEMMER DEFRANK WESSELS, PLLC
250 Grandview Drive, Suite 500
Ft. Mitchell, Kentucky 41017
(859) 344-1188
(859) 578-3869 Fax
jwhittaker@hemmerlaw.com

*Trial Attorneys for Plaintiff,*
*Bonnie R. Pendleton*